BURMESTER and others *v.* PHILLIPS and others.

*(Circuit Court, E. D. Virginia. December, 1885.)*

SALE OF CHATTELS—PROPOSAL MAY BE WITHDRAWN BEFORE ACCEPTANCE.

An order was mailed on the fourteenth March by a house in Charleston, South Carolina, to a house in Fredericksburg, Virginia, for a cargo of white Rappahannock corn, at 51 cents a bushel, free on board vessel, and 7 cents freight, to be shipped "on receipt" of letter. The order could not be complied with at once. In answer the Fredericksburg house say they will correspond for the corn, and endeavor to procure vessel, at the prescribed prices. On April 4th the Fredericksburg house write and telegraph that they have secured the corn at the price, and vessel at the rate of freight, prescribed. In due course of mail answer should have been received to the telegram by the sixth, and the letter by the eighth, April. No answer positively accepting the corn was received by the 11th, when the Fredericksburg house telegraphed that the corn

had been resold. *Held*, that the letter and telegram of the fourth April were a *new proposal*, and that the failure of the Charleston house to answer before the 11th, prevented the meeting of minds necessary to a contract; so that there was no contract, and defendants were at liberty to resell.

The cause was tried on the eighteenth November, and—under instructions from the court that the correspondence between the plaintiffs and defendants, which was the only evidence submitted on the subject of contract, there was no contract between the parties—the jury found for the defendant. Defendants afterwards moved for a new trial, on the ground that the instructions of the court were contrary to the law of the case. On this motion, counsel was heard at length, and the following is the opinion of the court.

*W. L. Royall*, for plaintiffs.

*St. George Fitzhugh*, for defendants.

HUGHES, J. There is no other evidence in this case, on the question whether there was a contract of sale, than the correspondence which occurred between the parties in March and April last. The parties never saw nor conferred with each other in any manner whatever, except by means of this written correspondence. Phillips & Co. were merchants in Fredericksburg, Virginia, and Burmester & Co. merchants in Charleston, South Carolina. The correspondence was about a proposed shipment of Rappahannock white corn by the defendants, in Fredericksburg, to the plaintiffs, in Charleston. It began in March, but up to the end of that month had contained no letters of distinctive importance except two from Burmester and three from Phillips. On the fourteenth March, Burmester wrote, saying: "On receipt of letter [you] can ship us a cargo of 10 to 15,-000 bushels choice dry Rappahannock white corn, at 51 cents, free on board, freight 7 cents a bushel." Phillips wrote in reply, on the 16th, that he had communicated with farmers on the Rappahannock for the corn, and would telegraph when they were heard from. On the 20th, Phillips wrote that he could get the corn at 51 cents, and was then at work to secure a vessel at 7 cents for the freight. Then came a short letter from Burmester, of the twenty-third March, saying, in answer to the letter of Phillips of the 20th, that he hoped Phillips would succeed in getting a vessel promptly; and giving some directions about ship's papers. On the 30th, Phillips wrote that he hoped to succeed in getting a vessel of ten to twelve thousand bushels, at Burmester's limit of 7 cents, and if so, would observe Burmester's directions about ship's papers. Then came the following correspondence:

APRIL 4, 1885.

*Messrs. Wm. Burmester & Co.:* We have at last succeeded in chartering a vessel at 7c. freight to take cargo corn for you, and we wired you this A. M., saying, "Have secured a vessel, about 12,000 bushels, at 7c., and bought corn at limit," which we now confirm. We have bought this corn, say about 12,000 bushels, at 51c., f. o. b., the best that could be done. The corn is all prime white, and of the best crops on the river. The schooner char-

tered is the Mattie E. Taber, of New York. She is a good vessel, and rates well. We expect her to reach the landing to commence loading the corn about tenth inst., and she will have good dispatch in loading. As soon as she arrives at the landing we will advise you. The cargo will be a nice one. Offerings, corn, small.

Yours, truly, A. K. PHILLIPS & Co.

SOUTHERN TELEGRAPH COMPANY.

DATED FREDERICKSBURG, VA., April 4.

*To Wm. Burmester & Co.:* Have secured vessel at seven. About twelve thousand. Bought corn at limit. Particulars by mail.

A. K. PHILLIPS & Co.

CHARLESTON, S. C., April 4, 1885.

*Messrs. A. K. Phillips & Co.*—DEAR SIRS: We are in receipt of telegram, and will await your letter's arrival as to particulars.

Yours, respectfully, WM. BURMESTER & Co.

FREDERICKSBURG, VA., April 9, 1885.

*Messrs. Wm. Burmester & Co., Charleston*—GENTS: The schooner Mattie E. Taber arrived at the landing to-day, and will be ready to receive cargo on Saturday, and, with good weather, she will have good dispatch. Market for corn strong. Nothing offering to-day. Buyers offering freely 51c., f. o. b.

Yours, truly, A. K. PHILLIPS & Co.

Will draw for cargo at sight, without grace, with B. L. It costs about ¼ per cent. to collect draft on Charleston, which we will add in our draft.

Received morning's mail, April 11, '85.

SOUTHERN TELEGRAPH COMPANY.

DATED FREDERICKSBURG, VA., April 11.

*To Wm. Burmester & Co.:* Not hearing from you, we have resold the cargo of corn. A. K. PHILLIPS & Co.

SOUTHERN TELEGRAPH COMPANY,

CHARLESTON, S. C., April 11, 1885.

*To A. K. Phillips & Co., Fredericksburg, Va.:* Never canceled order. Will expect cargo as ordered, instructions. Mattie E. Taber. Twelve thousand bushels. WM. BURMESTER & Co.

SOUTHERN TELEGRAPH COMPANY.

APRIL 11, 1885.

*To Cr.:* Yours to A. K. P. & Co., signed Wm. Burmester & Co., was de'l'd at 11·40 A. M., Fredericksburg, Va., 11, A. K. Phillips & Co.

FREDERICKSBURG, VA., April 11, 1885.

*Messrs. Wm. Burmester & Co., Charleston*—GENTS. We have been expecting to hear from you in regard to the cargo of corn since fourth inst., and failing to do so, we resold the cargo, and so wired you this morning. Your letter of fourth inst., in reply to our telegram, says: "We are in receipt of telegram, and will await your letters as to particulars,"—since which we have nothing from you, and as you did not reply approving the purchase, we resold the cargo. Yours, truly, A. K. PHILLIPS & Co.

The question in the case is whether, on the fourth April, there was a proposal still pending from Burmester to Phillips, like that embodied in the former's letter of the fourteenth March; or whether the letter and telegram of Phillips, dated on the fourth April, were in law

a *new proposal* from Phillips, requiring a distinct and prompt acceptance from Burmester, in order to constitute a contract binding upon Phillips.

The condition of the law in respect to such transactions is set out by Mr. Benjamin in his work on Sales, § 39, upon a very full consideration of all the authorities. I will quote from him, and from his American editor in notes to the section 39. In order to constitute a valid contract, the assent to it must be mutual, and intended to bind both sides. The assent of the parties must co-exist at the same moment of time. A mere proposal by one man obviously constitutes no bargain of itself, It must be accepted by another, and the acceptance must be unconditional. If a condition be affixed by the party to whom the offer is made, or any modification or change in the offer be requested, this constitutes in law a rejection of the offer, and a new proposal, equally ineffectual to complete the contract until assented to by the first proposer. The acceptance or assent must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed; but exactly meeting them at all points and closing with them just as they stand. If the original offer leave anything to be settled by future arrangement, it is merely a proposal to enter into an arrangement, which is not completed until there is, upon the face of the correspondence, a clear accession on both sides to one and the same set of terms. The foregoing is the language of Mr. Benjamin and of his American annotator, citing a conclusive array of authorities in support of the principles laid down. It is also laid down that the assent of a person to the proposal of another may be implied in cases the nature of which admits of the implication, and need not be express.

Such being the law of contracts, it is not difficult to arrive at a conclusion in the case we have in hand. It is certain that no contract arose from Burmester's letter of the fourteenth March, in which he says: *"On receipt of* [this] *letter, you can ship us corn at 51 cents, at a freight of 7 cents."* Phillips could not comply with this order *on the receipt of* the letter, and there was no contract. It is equally certain that Burmester's next letter, that of the 23d, written after Phillips had informed him that the corn could be got, and in which Burmester merely expressed the hope that a vessel could be secured promptly, was not a renewal of his order of the 14th. It bound him to nothing. Nor was it an acceptance of a new proposal from Phillips. As yet everything was conditional upon the securing of a vessel. Phillips was under no engagement. Nor was Burmester. In that letter of the 23d, Burmester said nothing even to confirm what Phillips had done in engaging corn from the farmers on the Rappahannock. After this letter of March 23d, nothing is heard from Burmester for 18 days; although on the fourth April he had received the telegram of that date from Phillips, and by the 6th must have received Phillips' letter of the 4th, in which two documents Phillips had informed him

that he had at last succeeded in chartering a vessel, and had bought 12,000 bushels of white corn at 51 cents, free on board, and had arranged to ship it at 7 cents freight,—nothing, except that on the 4th he telegraphed Phillips that he had received his telegram of that day, and would await his letter of same day as to particulars. Certainly there was no renewal of the order given in his letter of March 14th in the non-committal telegram of the fourth April.

I am clear that inasmuch as the letter of the fourteenth March was not accepted or complied with "on its receipt," and became nugatory, there was no revival or renewal of it in Burmester's letter of the twenty-third March, much less in his telegram of the fourth April. I am clear that the telegram and letter of Phillips, sent on the fourth April was, in the eye of the law, a *new proposal*, which, in order to bind Phillips, must have been promptly accepted by Burmester. Instead of accepting it promptly, Burmester seemed to be cautious not to do so. In the whole correspondence there was no meeting of the minds of the parties. There was but one opportunity in which it was practicable that there should be. This was on the fourth April, when Phillips informed Burmester that he was now ready to comply in every particular with the conditions which Burmester had imposed, and insisted continually upon, from the beginning. Burmester did not accept this new proposal. He delayed a week, and lost the contract.

The motion for a new trial is overruled.